UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| JIMMY H. CAUSEY, | ) | C/A No. 4:13-00604-TMC-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Report and Recommendation |
| | ) | |
| MICHAEL McCALL, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner, Jimmy H. Causey (Petitioner/Causey), is currently incarcerated at Lee Correctional Institution. Petitioner appearing *pro se*, filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on March 7, 2013. Respondent filed a motion for summary judgment on July 31, 2013, along with a return, supporting memorandum and exhibits. (Docs. #32 and #33). The undersigned issued an order filed August 1, 2013, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. (Doc. #34). On August 29, 2013, Petitioner filed a motion to extend the time period to file a response to the motion for summary judgment which was granted giving Petitioner until October 16, 2013, to file a response.

On September 6, 2013, Petitioner filed a motion entitled "Motion to Submit and Amend." (Doc. #42). In this motion, Plaintiff asserted that he wanted to amend his petition so as to abandon certain issues, and to supplement the state court record with affidavits and other matters. Respondent

_____

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 19.02 (B)(2)(c), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

filed a response to the motion stating that it did not oppose the amendment to the petition to abandon certain claims but did object to his motion to supplement the state court record with affidavits and other matters. (Doc. #48). Petitioner's "Motion to Submit and Amend" was granted in part and denied in part. Petitioner's motion to amend his petition was granted but Petitioner's motion to submit additional evidence, including but not limited to affidavits, was denied as review under 28 USC §2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinhoster, 131 S.Ct. 1388, 1398 (2011). Thus, Respondent's motion for summary judgment (Doc. #33) was deemed MOOT with right to re-file along with a return and memorandum within thirty (30) days of the date of the order.

Respondent filed an amended motion for summary judgment on November 26, 2013, along with a return, supporting memorandum and exhibits. (Docs. #77 and #78). The undersigned issued an order filed December 6, 2013, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. (Doc. #80). Petitioner filed a response on January 10, 2014, (doc. #94).

## I.  PROCEDURAL HISTORY

The procedural history as set forth by the Respondent has not been seriously disputed by the Petitioner in his response. Therefore, the undersigned will set out the undisputed procedural history, in part, as set forth by the Respondent.

Petitioner is presently confined in the Lee Correctional Institution of the South Carolina Department of Corrections (SCDC), as the result of his Richland County convictions and sentence of life imprisonment without the possibility of parole (LWOP). The Richland County Grand Jury

indicted him on August 13, 2003, for three counts of kidnapping; one count of burglary in the first degree; and one count of armed robbery. Samuel M. Mokeba, Jason Chehoski and Ned Longshore of the Richland County Public Defender's Office represented him at trial on these charges.

On February 10, 2004, he received a jury trial before the Honorable James C. Williams. The jury found him guilty as charged, and Judge Williams imposed concurrent sentences of LWOP for each conviction. App. pp. 1-791.

Causey timely served and filed a notice of appeal. Assistant Appellate Defender Eleanor Duffy Cleary represented him on appeal. On August 25, 2005, Ms. Cleary filed a Final <u>Anders</u> Brief of Appellant on Causey's behalf and petitioned to be relieved as counsel. The only Issue raised in the <u>Anders</u> Brief was stated as follows:

> Did the trial court err in admitting evidence of appellant's prior cocaine use where it did not fall within a <u>Lyle</u>, infra, exception or serve as part of the res gestae of the offenses for which he was charged?

Final Brief of Appellant at p. 3.

Causey did not file a *pro se* response to the <u>Anders</u> Brief. On November 3, 2005, the State filed a Motion to Dismiss the Appeal, in which it sought dismissal based upon Causey's escape from SCDC custody on November 1, 2005. This motion was denied in a December 8, 2005, order.

On March 13, 2006, the South Carolina Court of Appeals filed an opinion dismissing Causey's appeal and granting counsel's petition to be relieved. <u>State v. Jimmy Causey #2</u>, 2006-UP-143 (S.C. Ct.App., Mar. 13, 2006). The Remittitur was sent to the Richland County Clerk of Court on March 29, 2006.

Causey then filed a *pro se* Post-Conviction Relief (PCR) Application (2006-CP-40-01903) on March 31, 2006, in which he alleged the following grounds for relief:

3

A.    Ineffective Assistance of counsel.

    1.    Failed to raise alibi defense.

    2.    Failed to call important fact witnesses.

    3.    Failed to conduct pretrial investigation.

    4.    Failed to request mistrial when victim admitted to friendship with judge.

    5.    Failed to request change of venue.

    6.    Failed to request instruction on accomplice liability.

    7.    Failed to object to improper vouching by prosecution.

    8.    Failed to object to improper jury instruction.

B.    Prosecution Misconduct.

    1.    Repeated vouching for prosecution witnesses.

    2.    Elicited false testimony from prosecution witnesses.

    3.    Improper comments to jury during closing argument.

C.    Abuse of Discretion by Judge.

    1.    Failed to disclose friendship with the victim.

    2.    Failed to exclude eyewitness identification.

    3.    Improperly disclosed 2 prior burglary charges to jury while giving elements of 1st degree burglary.

D.    Cumulative Trial Errors.

    1.    Errors of defense counsel.

    2.    Misconduct by prosecution.

    4.    Abuse of discretion by judge.

App. pp. 793-803. The State filed its Return on May 8, 2006. App. pp. 804-08.

4

Tara Dawn Shurling, Esquire, was originally appointed to represent Causey in PCR. However, she was relieved and Charles T. Brooks, III, was appointed on or about October 18, 2006. On July 3, 2007, Causey filed an Amended PCR Application.

Then, on October 19, 2007, Causey (through counsel, Mr. Brooks) filed an "Amended Post Conviction Relief Application," in which he asserted that counsel was ineffective for not presenting an expert on identifications. App. pp. 809-10.

Mr. Brooks was relieved in February 2008, and Wayne Floyd, Esquire, was substituted as Causey's PCR counsel. Causey, through Mr. Floyd, filed a "2nd Amended Application for Post Conviction Relief" on December 2, 2009. He asserted the following claims in that pleading:

1.      [Applicant] received ineffective assistance of trial counsel each of the following reasons:

a. [Counsel] failed to present alibi witnesses that were available and could testify that Jimmy Causey was somewhere else at the time the crime was committed;

b. [Counsel] failed to call Petitioner's hairstylist who could have testified that Petitioner's hair had blond highlights at the time the crimes were committed;

c. [Counsel] failed to request a continuance of the trial when Erica Swerling made an identification of the Defendant at the day of the trial prior to the commencement of the trial;

d. [Counsel] failed to obtain and present expert witness testimony on the viability of identification testimony;

e. [Counsel] failed to object to, move to strike, move for a mistrial, and move to dismiss for prosecutorial misconduct for each of the following items of testimony:

1)      hearsay testimony of Sheree McCray that Dwayne Wilson[2] told her that

---

[2] The co-defendant has been referred to as Dwayne, Dewayne, and Dawayne. Based on the trial record, the name was spelled Dawayne and will be spelled as such in the analysis of this report

5

Jimmy Causey participated in the crime; (457), (458)

2) testimony of Sheree McCray that Jimmy Causey was a threat; (471)

3) hearsay testimony from Heather Grant that Chad Grant told her that Jimmy Causey and Dwayne Wilson were involved in the crime; (549)

4) hearsay testimony of Jack Swerling that Sheree McCray told him that Jimmy Causey was involved in the crime; (222)

5) testimony of Heather Grant that Jimmy Causey would go out at night with dark clothes saying he had business to take care of; (530)

6) hearsay testimony of Detective Eric Barnes that Dwayne Wilson said Jimmy Causey may be involved in the crime; (573,574),(615)

7) hearsay testimony of Detective Eric Barnes that Sheree McCray told him that Petitioner was involved in the crime; (575)

8) testimony of Detective Smith that Sheree McCray said the truth in her statement; (654)

9) [Counsel] failed to object to the prosecutor's argument that Dwayne Wilson had never been in trouble before and there was no evidence to support that argument;(697)

10) [Counsel] failed to object to the prosecution's argument we told the jury "that's the truth, we know that" when discussing testimony of Dwayne Wilson; (709)

11) failed to object to prosecution argument that Petitioner was high on cocaine at the time of crime; (687)

12) [Counsel] failure to object to court's charge on voluntary intoxication; (752)

13) [Counsel] failed to object to court's failure to give limiting instruction on evidence of Petitioner's drug use prior to crime;

14) [Counsel] failed to move for a mistrial and for a new trial when hearing statement of Jack Swerling at sentencing, he and the Judge had been friends for a long time. (784);

2. Ineffective assistance of Appellate Counsel by failing to raise

---

and recommendation.

the question on appeal of whether or not Erica Swerling should have been allowed to testify as to her identification of the Petitioner.

3.      Prosecutorial misconduct for the following:
   a.      engaging in a pattern of introducing inadmissible hearsay testimony of Jack Swerling, Sheree McCray and Heather Grant, and Richland County Deputies;

   b.      telling the jury in closing arguments that the prosecutors believed the testimony of Dwayne Wilson; (709)

   c.      raising the question of voluntary intoxication and arguing that Petitioner was high on cocaine when there was no evidence to support that; (687)

   d.      in arguing to the jury that Dwayne Wilson had never been in trouble before when there was no evidence to support that. (697)

4.      That the effect of the aforementioned matters, individually and cumulatively were a violation of the Petitioner's constitutionally guaranteed rights to due process of law, equal protection of the law, right to fair trial and fundamental fairness as guaranteed by the fifth, sixth and fourteenth amendments to the United States Constitution and Article 1, Section 3, and Article 1, Section 14 of the South Carolina Constitution.

App. pp. 811-14.

The Honorable James R. Barber, III, held a hearing into the matter on December 3, 2009, at the Richland County Courthouse. Causey was present at the hearing, and Mr. Floyd represented him. Assistant Attorney General Brian T. Petrano represented the State. Causey testified on his own behalf. He also presented testimony from Laurice Chambers, Chris Goff, Brooke Morris, Artana Cassidy, and Kelly Myers. The State presented the testimony of lead trial counsel, Mr. Mokeba.

App. pp. 815-942. Judge Barber also had before him "the records of the Richland County Clerk of Court, the Record on Appeal (ROA) of the proceedings against the Applicant, the Applicant's records from [SCDC], and the Remittitur, Decision, and Brief from the Applicant's direct appeal." App. p. 945.

On March 10, 2010, Judge Barber filed an Order of Dismissal, in which he denied relief and dismissed the Application with prejudice. The Order of Dismissal addressed Causey's claims of ineffective assistance of trial counsel because counsel: (1) failed to present an alibi defense; (2) failed to present testimony from his hair stylist to explain that (contrary to the victim statements/testimony) Causey's hair color was blond; (3) should have requested a continuance to consult an identification expert, when it became known that one of the victim's would be identifying Causey in court; (4) failed to object, move to strike, move for a mistrial, and/or move to dismiss for prosecutorial misconduct regarding certain instances of testimony; (5) failed to object, on the ground of hearsay, to the testimony of witness McCray's testimony that Dawayne Wilson told her (McCray) that Causey had participated.in the crimes; (6) failed to object to McCray's testimony that Causey was a threat; (7) failed to object to witness Heather Grant's testimony that Chad Grant told her that Causey and Dawayne Wilson did the crime(s); (8) failed to object to victim Jack Swerling's testimony that Ms. McCray told him Causey was involved in the crimes; (9) failed to object to witness Grant's testimony that Causey left at nights wearing dark clothing and telling her that he had some business to take care of; (10) failed to object to Detective Barnes' testimony that Dawayne Wilson said Causey may be involved in the crimes; (11) failed to object to Detective Erick Barnes' testimony that McCray said Causey was involved in the crimes; (12) failed to object to Detective Smith's testimony that McCray told the truth in her statement; (13) failed to object to the Solicitor's

8

argument that Dawayne Wilson had never been in trouble before because there is no evidence to support that claim; (14) failing to object to the Solicitor's closing argument suggesting that Dawayne Wilson's testimony was "the truth;" (15) failed to object to the Solicitor's closing argument that Causey was high on cocaine at the time of the crime; (16) failed to object to the trial court's charge on voluntary intoxication; (17) failed to object to the trial court's failure to give a limiting instruction on evidence of Causey's drug use; and (18) failed to move for a mistrial when, during sentencing, the victim indicated that he and the trial court had been friends for a long time.

The Order of Dismissal also addressed Causey's allegation that appellate counsel was ineffective for failing to brief the issue of whether one of the victims should have been allowed to identify Causey at trial. Finally, it addressed Causey's claims of prosecutorial misconduct and cumulative error or cumulative prejudice. App. pp. 944-967.

Causey timely served and filed a notice of appeal. Assistant Appellate Defender LaNelle C. Durant represented him in collateral appellate proceedings. On November 19, 2010, Causey, through Ms. Durant, filed a Petition for Writ of Certiorari. The Petition for Writ of Certiorari listed the following claims:

1.  Did the PCR court err in failing to find trial counsel ineffective for not calling the three alibi witnesses: Laurice Chambers, Brooke Morris, and Chris Goff, who testified at the PCR hearing that Causey was with them on the night of the incident and could not have committed the crimes?

2.  Did the PCR court err in failing to find trial counsel ineffective for not calling Artana Cassidy, Causey's hairstylist, who testified at the PCR hearing that Causey had short blond hair as of June 14, 2002[,] which was twelve days before the incident as she colored his hair?

3.  Did the PCR court err in failing to find trial counsel ineffective for not requesting a limiting charge on Causey's prior drug use[,] which the judge admitted into evidence but said he would instruct the jury to consider the drug use as to motive only and not for any other reason but the judge failed

9

to do so during the jury charges?

4.      Did the PCR court err in failing to find trial counsel ineffective for not objecting when Detective Smith testified that Sheree McCray, the girlfriend of co-defendant Dwayne Wilson, told the truth in her statement thereby vouching for the witness?

5.      Did the PCR court err in failing to find trial counsel ineffective for not objecting when the solicitor stated in his closing argument that Co-defendant Dwayne Wilson was telling the truth?

6.      Did the PCR court err in failing to find appellate counsel ineffective for not arguing on appeal that Erica Swerling, the wife of Jack Swerling, should not have been allowed to testify as to her identification of Causey when he walked into the court room, when he had not been identified by any one prior to trial?

7.      Did the PCR court err in failing to find there was prejudice to petitioner from the cumulative effect of these multiple errors?

Certiorari Petition, p. 2. The State filed a Return to Petition for Writ of Certiorari on February 3, 2011.

The South Carolina Court of Appeals filed an order denying certiorari on January 7, 2013. It sent the Remittitur to the Richland County Clerk of Court on February 5, 2013.


**II. HABEAS ALLEGATIONS**

As discussed earlier, Petitioner amended his petition to limit his grounds for relief to the following:

Ground One**:**          Ineffective Assistance of Counsel:

        a.      Counsel failed to call Artana Cassidy (hair stylist) to testify at trial.

        b.      Counsel failed to call (3) alibi-witness to testify at trial.

        c.      Counsel failed to object to improper vouching by the prosecutor during

10

closing argument.

    d.    Counsel failed to object to when the victim, Jack Swerling admitted to friendship with the trial judge.

Ground Two:    Ineffective Assistance of Appellate Counsel:
    1.    Appellate counsel failed to raise the unreliable, unduly suggestive identification by robbery victim, Erica Swerling, for appellate review.

Ground Three:    Abuse of Discretion by Trial Judge:

    1.    The judge abused his discretion by failing to suppress the ID by robbery victim, Erica Swerling.

Ground Four:    Cumulative Errors:

    1.    The cumulative effect of the aforementioned, view individually and cumulatively, violated Petitioner's right to due process, as guaranteed by the 6th and 14th Amendments to the United States Constitution.

(Amended Petition).

## III.  STANDARD OF REVIEW

In addition to the standard that the court must employ in considering motions for summary judgment, the court must also consider the petition under the requirements set forth in 28 U.S.C. § 2254. Under § 2254(d),

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim-
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the State court proceeding.

Thus, a writ may be granted if a state court "identifies the correct principle from [the Supreme]

11

Court's decisions but unreasonably applies that principle of law" to the facts of the case. *Humphries v. Ozmint*, 397 F.3d 206, 216 (4th Cir. 2005) (*citing Williams v. Taylor*, 529 U.S. 362, 413 (2000)). However, "an 'unreasonable application of federal law is different from an incorrect application of federal law,' because an incorrect application of federal law is not, in all instances, objectively unreasonable." *Id.* "Thus, to grant [a] habeas petition, [the court] must conclude that the State court's adjudication of his claims was not only incorrect, but that it was objectively unreasonable." *McHone v. Polk*, 392 F.3d 691, 719 (4th Cir. 2004). Further, factual findings "made by a State court shall be presumed to be correct," and a Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## IV. PROCEDURAL BAR

The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above (i.e., direct appeal, appeal from PCR denial), and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

 If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as

quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

. . . the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both "cause" for noncompliance with the state rule and "actual prejudice" resulting from the alleged constitutional violation.

*Smith v. Murray*, 477 U.S. 533 (*quoting Wainwright v. Sykes*, 433 U.S. at 84 (1977)). *See also*

*Engle v. Isaac*, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas Petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a Petitioner has failed to comply with state procedural requirements and cannot make the required showings of cause and prejudice, the federal courts generally decline to hear the claim. *See Murray v. Carrier*, 477 U.S.478, 496 (1986).

## V.  ANALYSIS

### Ground One

In Ground One, Petitioner asserts several ways in which trial counsel was ineffective. The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970).  In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel.  A petitioner must first show that his counsel committed error.  If an error can be shown,

13

the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) (quoting Strickland, reversed on other grounds, 476 U.S. 28 (1986)). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Strickland, at 694.

The court further held at page 695 that:

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct . . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added.)

In Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000), *quoting* Strickland at 694, the Court held that "[to] establish ineffectiveness, he [a defendant] 'must show that counsel's representation fell below an objective standard of reasonableness, and to establish prejudice he must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Thus, the Supreme Court confirmed that the correct standard for judging ineffective assistance of claims is the Strickland standard.

14

Additionally, when presented with an application for habeas relief, the first inquiry by the court is to determine whether the claim raised in the petition was "adjudicated on the merits" by the state court. 28 U.S.C.A. §2254(d). If the claim was properly presented to the state court and the state court adjudicated it, the deferential standard of review set forth in §2254(d) applies and federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Id. § 2254(d)(1),(2); see Williams v. Taylor, 529 U.S. at 398.

### Ground One(a)

In his amended habeas petition, Petitioner argues ineffective assistance of trial counsel for failing to call Artana Cassidy, hair stylist, to testify at trial. Petitioner asserts that she testified at his PCR hearing and provided a computer printout sheet reflecting the dates Petitioner visited her salon and services she provided. Petitioner contends that Jack Swerling and his daughter testified that the person with the weapon had dark hair, but Ms. Cassidy testified that she dyed Petitioner's hair the lightest color blond available on June 14, 2002, only thirteen days prior to the robbery. Ms. Cassidy testified at PCR that once the hair was dyed blond, it remained blond until his next hair cut on July 5, 2002, eight days after the robbery. Petitioner argues that while Jack Swerling's daughter testified that the person with the gun had long hair, Ms. Cassidy testified at PCR that Petitioner always kept his hair "rather short." Petitioner submits also that Ms. Cassidy testified that if someone were to use a type of temporary color to dye their hair dark on top of the blond, it would turn the hair a greenish

color. Further, she testified that his hair was still blond when he came in for a haircut on July 5. Additionally, Petitioner contends that Jack Swerling's wife testified that the robber wore a "sheer neutral" color stocking over his head which allowed her to see that the person had dark hair, thus negating any argument that Ms. Cassidy's testimony would not have helped him. Petitioner argues that trial counsel's failure to call Ms. Cassidy prejudiced him and there is a reasonable probability that the jury would have reached a difference verdict.

Respondent submits that the state court's rejection of Causey's claim was not contrary to and did not involve an "unreasonable application of" clearly established United States Supreme Court precedent. Respondent asserts that counsel was not informed of the information regarding Ms. Cassidy until the trial was well underway at which time counsel made a strategic decision not to call her since she would have contributed little to Petitioner's defense as both men involved in the home invasion had panty hose over their heads. If trial counsel had presented her testimony, Respondent argues that it would have opened the door to the introduction of a photograph of Petitioner and another defendant from a bank robbery in which they were disguised as they had been during commission of these crimes.[3]

In his response to the motion for summary judgment, Petitioner asserts that the PCR judge's finding and Respondent's argument that although his hair was blond on the date of the crime, his hairstylist agreed that any over the counter hair-coloring product would make it dark again is flawed. Petitioner submits that the contention that he would have his hair dyed blond and then dye it back to the original color to commit a crime is "preposterous". (Doc. #56, p. 7). Also, Petitioner argues

---

[3] Petitioner also asserts that if the pictures from the bank robbery came in even though the trial judge ruled they could not, the persons who robbed the bank wore a stocking over their faces and a black ski mask over the stocking.

that there was never any testimony at trial that alleged he dyed his blond hair dark, and the PCR judge failed to discuss the fact that the hairstylist testified that if someone did use a temporary color to dye their hair dark on top of the blond, it would turn the hair a greenish color due to the base being brown. Additionally, Petitioner asserts that if the jury had heard the testimony of his hairstylist that he always kept his hair "rather short" and found her to be credible like the PCR judge did, they may have found he was not a participant in the crime since the Swerling's daughter testified the person with the gun had long hair. Additionally, Petitioner asserts that the person who committed the crime was wearing a sheer neutral stocking based on Mrs. Swerling's testimony and a quick demonstration during the trial would have shown that the color of the stockings does not obscure the color of a person's hair.

At the PCR hearing, Petitioner's hair stylist, Ms. Artana Cassidy, testified that Petitioner had his hair dyed the lightest blond on June 14, 2002, and it lasted until his next hair cut so that it would still have the blond coloring on June 27, 2002. (App. 822-824).  Cassidy testified that his next haircut was on July 5, 2002, and he still had the blond coloring.(App. 828-829).  Upon cross examination, Cassidy testified that someone can color their hair at home with a temporary color or can use a spray that would wash out immediately. (App. 827-820). However, she testified that if "somebody was to color their hair dark on top of blond it is not going to be pretty, it would probably be like a greenish color because that is the base color in brown." (App. 828). Upon recross-examination, Cassidy was asked if she recalled Petitioner getting his hair "redyed." Cassidy responded that her records did not show where he paid to have it colored or retouched but testified that "I have colored his hair on more than one occasion. We changed computer systems around this time. I'm sure that I have documentation somewhere maybe that he had it done again. But I know

17

I did it more than once, but that is the only time I have on paper where he paid for it." (App. 830).

During the trial of the case, Mrs. Erica Swerling testified about the events of the night in question and stated that the robber had a stocking/pantyhose over his head but that she could see he had dark hair. She testified that the hose color was the regular color of hose not "like a pair of woman's black opaque hose. They were regular hose." (App. 353-354).

At PCR, Samuel Mokeba, trial counsel, testified that in the middle of trial when testimony was going on, Petitioner indicated to him that "my hair actually wasn't black at the time" but was blond. (App. 907-908). Counsel testified that Petitioner did say that he needed to talk to his hairstylist about that and that "at that point I didn't think–two things were going on in my mind. How helpful would the hairstylist be in light of everything that has come out." Trial counsel went out to testify as follows:

> During the trial there was testimony that the person or persons who went to Mr. Swerlings house had something over their face and head. And it was – if it was dark and black, then clearly his head wouldn't be blue or blond, or whatever color it was, it would be the color of whatever disguise the person had.
>
> There is a second issue to this. The prosecutor had attempted to use—and actually it is in the transcript—image from the bank robbery, because at that point they also indicated that they had similar disguises on. And we had suppressed the use of that.
>
> Opening that door would have brought back those pictures of him, allegedly, and Mr. Wilson and their masks, which they claim—at the point at least they were trying to claim, which the judge suppressed, that were similar to the ones that the people wore at Mr. Swerling's house.
>
> So my point—my thought was if the person had something over their head, clearly the color wouldn't be visible. And if that is an issue for which I was wrong for doing that, I will gladly accept that responsibility.

18

(App. 908-909).

The PCR court held the following with regard to this issue:

> The Applicant claims that trial counsel was ineffective for failing to present testimony from his hair stylist to explain that (contrary to the victim statements/testimony) the Applicant's hair color was blond. In support of this allegation, the Applicant presented credibly testimony from Ms. Artana Cassidy, a licensed Cosmetology Instructor and the owner/operator of "Sheer Xpectations." Ms. Cassidy explained how she processed the Applicant's hair and that it was blond several weeks before the home invasion. However, Ms. Cassidy explained that it would be simple for the Applicant to have made his hair dark using an over the counter "Just for Men" type product. Also, trial counsel testified credibly, while he was aware of Ms. Cassidy, that he did not want to risk opening the door to the Solicitor's use of the bank robbery photograph(s). Trial counsel's strategic reasoning is convincing, especially considering the hair color testimony would be weak at best because it would be simple for the Applicant to have darkened his hair prior to the home invasion. Our courts are understandably wary of second-guessing defense counsel's trial tactics. Whitehead v. State 308 S.C. 119, 417 S.E.2d (1992). . . . The Applicant has not shown that counsel was deficient in that choice of tactics. Also, the Applicant has failed to satisfy his burden of proof and demonstrate any prejudice as to how the result of the trial would have been any different with Ms. Cassidy's testimony considering that agrees(sic) it would have been simple for the Applicant to have darkened his hair after she made it blond.

(App. 955).

Trial counsel testified that even though he was told during trial by Petitioner that he had blond hair at the time of the crime, he did not want to risk opening the door to having the pictures from the bank robbery shown to the jury. Courts are instructed not to second guess an attorney's trial strategy and tactics. Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir.1977); Stamper v. Muncie, 944 F.2d 170 (4th Cir.1991). The PCR court's rejection of the ineffective assistance of counsel ground for relief was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or result in a

decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(1), (2); Williams, supra. A presumption of correctness attaches to state court factual findings. 28 U.S.C. §2244(e)(1). Evans v. Smith, supra; Wilson v. Moore, supra.  The state PCR court's findings of fact are not only entitled to the presumption of correctness, 28 U.S.C. § 2254(e)(1), but also are supported by the record. Thus, the undersigned recommends that the Respondent's motion for summary judgment be granted as to Ground One (a).


**Ground One (b)**

In Ground One(b), Petitioner argues that trial counsel was ineffective for failing to call three alibi witnesses to testify at trial. Petitioner had the three witnesses testify at his PCR hearing. Petitioner contends that if counsel had called the three alibi witnesses to testify, they would have testified that he was home at the time of the robbery.

Respondent submits that Petitioner did not demonstrate either deficient performance or prejudice resulting from the failure to present the alibi witnesses. Respondent contends that Petitioner did not inform counsel of the alibi witnesses and that nothing in the file from the investigation suggested that Causey had these alibi witnesses or that this defense needed to be further pursued. Respondent submits that the PCR court also correctly found there was no prejudice from the failure to call the three alibi witnesses because they lacked plausible credibility.

In response to the motion for summary judgment, Petitioner argues that he can provide clear and convincing evidence that counsel knew about his alibi-witnesses prior to trial through the testimony of Fielding Pringle, counsel's supervisor at the time of the trial. Petitioner asserts that he

20

was unable to obtain the affidavit of Mrs. Pringle, but that she recalled him calling her after the first day of trial stating he was extremely unhappy that counsel did not call his witnesses to testify. Petitioner submits that Mrs. Pringle indicated she would testify to that fact at an evidentiary hearing. Further, Petitioner asserts that the reason none of the alibi witnesses initially came forward when Petitioner was charged with the crime is because they only later discovered, after being contacted by Petitioner's mother, that the crime and Heather Grant's surgery occurred on the same day. He further asserts that none attended the trial because they were not contacted to testify. Also, Petitioner asserts that the testimony of Dawayne Wilson and the Swerlings was inconsistent and, thus, there was not overwhelming guilt. Petitioner submits that "[i]t's impossible for the judge to determine whether the testimony of (1) adverse witness, who was a disgruntled ex-girlfriend, could undermine the testimony of (3) alibi-witnesses, due to him never having the opportunity to observe Ms. Grant's creditability(sic)." (Doc. # 56, p. 3).

At the PCR hearing, Brooke Morris (Morris) testified on Petitioner's behalf. Morris testified that she is Petitioner's cousin and that Petitioner's girlfriend, Heather Grant, had surgery on June 27, 2002. Morris testified that she worked with Heather Grant and went to Petitioner's house to visit her around 8:00 p.m. and Petitioner was home. Morris testified that they ended up eating dinner and watching a movie before leaving after 11:00 p.m. Morris testified that her husband at the time, Chris Goff (her cousin), Heather Grant and Petitioner were at the house that night and that Petitioner was there the entire time. (App. 832-834). Morris testified that she talked to Petitioner's mother before Petitioner went to court and told her that she could say where Petitioner was that night. Upon cross-examination, Morris testified that she did not go to Petitioner's trial and did not personally tell his attorney that she could vouch for his whereabouts that night. (App. 835).

21

Chris Goff testified at the PCR hearing that Petitioner lived with him at the time. Goff testified that when he arrived home from work that day around 4:30 pm and saw blood in his kitchen, he went next door to his cousin's house where he learned that Heather Grant had cut her hand requiring her to go to the hospital to have it sewn up. Goff testified that Petitioner and Grant arrived home about 5:00 p.m. and that he and Petitioner had invited some people to come over and eat catfish stew that he was cooking. Goff testified that everyone left between 11:00 pm and 12:00 am, but that Petitioner was there the entire time. (App. 838-840). Upon cross-examination, Goff testified that no one ever talked to him, he did not go to the trial, and he did not tell Petitioner's attorneys that he could vouch for Petitioner's whereabouts on the night of the alleged crime. (App. 841-842). Goff testified that he was "pretty sure" he told Petitioner's mother that Petitioner was at home that night. (App. 840).

Laurice Chambers (Chambers) testified at the PCR hearing. Chambers stated that he lived two doors down from Petitioner, and that he is Chambers' nephew. Chambers testified that Heather Grant worked with him at Garris Insurance and that he gave her a ride to work everyday. Chambers stated that he knew that Grant had cut her hand and had surgery. When Chambers arrived home around 5:30, he saw Petitioner's truck at home. Around 9:30, Grant came over to his house asking if he had anything for pain and then Petitioner came over around 10:00 p.m. but went back home. Chambers then went over to Petitioner's house to ask Grant if she needed a ride the next day and they were watching television along with Morris, Goff, Morris' ex-husband, Petitioner and Grant. Chambers testified that he stayed for about an hour and returned home but that Petitioner was still there. Chambers testified that he never told law enforcement but did tell Petitioner's mother that he saw Petitioner that night. (App. 844-846).

Petitioner testified that he gave the names of alibi witnesses along with the name of his hairstylist to defense counsel and told him that his mother, Lynn Groves, would call counsel with their contact information. Petitioner testified that on the morning of trial, he asked counsel to request a continuance so that he could call his witnesses. However, Petitioner asserts counsel told him that he was going ahead with the trial since Jack Swerling had to be in federal court the following week so that a continuance would not be granted. (App. 858-864). Petitioner states that counsel told him he was not calling any witnesses to testify and that if he was convicted, "you can PCR me." (App. 888). Petitioner admitted that his girlfriend at the time was not an alibi witness for him and testified for the prosecution that she and Petitioner stayed at her grandmother's house that night and that Petitioner did not return to her grandmother's house until 11:00 pm that night. (App. 886). However, Petitioner testified that his other alibi witnesses could have "refute[d]" her testimony and it would have been conflicting testimony. (App. 893).

Lynn Groves testified that Petitioner is her son and that she called trial counsel Mokeba before the trial giving him the names of the alibi witnesses along with their contact information. However, she testified that he never contacted them. Upon cross-examination, Groves testified that she went to the trial every day but never said anything about the witnesses at trial. (App. 849-854).

Trial counsel, Samuel Mokeba, testified that if he had been given the names of alibi witnesses, he certainly would have talked to them. Counsel testified that he does not recall any conversation with Petitioner's mother when she gave him names of alibi witnesses. (App. 904-905).

The PCR court held as follows:

> The Applicant claims that trial counsel was ineffective for failing to present an alibi defense. In support of his allegation the Applicant presented testimony at the PCR hearing from several witnesses who purport that they were with the Applicant the night of the home

23

invasion. The Applicant also presented testimony from his mother who explains that she informed trial counsel of the alibi witnesses. On the other hand, trial counsel testified that he knew nothing of any sort of alibi witnesses, that he never heard anything regarding alibi from the Applicant, the Applicant's mother, or from his investigation and review of the case. This Court finds the alibi issue is wholly without merit. Specifically, the "alibi" witnesses presented at the PCR hearing were absolutely not credible. In addition, trial counsel testified credibly that no one ever informed him of any sort of alibi. Accordingly, the applicant failed to satisfy his burden of proof and demonstrate that trial counsel's performance was deficient (for not presenting witnesses he did not know about), or that he (the Applicant) was prejudiced (because the "alibi" witnesses were not credible and could not have made the result of the trial any different). Finally, regarding the alibi witnesses, this Court notes that the group claiming to be watching movies and eating dinner with the Applicant included with them Ms. Heather Grant. Unlike these witnesses, Ms. Grant testified at the trial and explained how the Applicant (and Dewayne Wilson) dropped her off at her grandmother's house around 2:30 and that the Applicant returned there alone to spend the night at around 11:30 pm. (ROA p. 521-522). Ms. Grant made no mention of a dinner and movies. The Applicant failed to demonstrate exactly how trial counsel's performance was deficient and how he was prejudiced by the purported deficient performance.

(App. 953-954).

Trial counsel testified that he was unaware of the alibi witnesses and had not been told about them by Petitioner or Petitioner's mother. Counsel testified that he would have contacted them had he known about them. Further, counsel testified that he went through the investigations with Petitioner, there were a lot of people they talked to prior to trial, he met with Petitioner several times and talked about witnesses and the names of the people the investigator spoke with, and  Petitioner never mentioned these witnesses to him. (901, 904-906). The PCR court found trial counsel's testimony credible while finding Petitioner and Petitioner's mother's testimony not credible. Credibility rulings are entitled to deference by this court, which the Petitioner may overcome only by showing clear and convincing evidence to the contrary. 28 USC §2254(e)(1); Wilson v. Ozmint,

352 F.3d 847, 858–859 (4th Cir.2003) (quoting <u>Miller–El v. Cockrell</u>, 537 U.S. 322, 340, 123 S.Ct.

1029, 154 L.Ed.2d 931 (2003)) (internal citations omitted); <u>Cagle v. Branker</u>, 520 F.3d 320, 324 (4th

Cir.2008) (quoting <u>Marshall v. Lonberger</u>, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983))

(for a federal habeas court to overturn a state court's credibility judgments, the state court's error

must be stark and clear.... Indeed, federal habeas courts [have] no license to redetermine credibility

of witnesses whose demeanor has been observed by the state trial court, but not by them). The PCR

court found no error on the part of trial counsel because he could not call alibi witnesses of which

he was unaware.[4]

The PCR court's rejection of the ineffective assistance of counsel ground for relief was not

"contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States; or result in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the state court

proceeding." §2254(d)(1), (2). The issues surrounding trial counsel's research and Petitioner's

alleged alibi witnesses involve credibility determinations, and the PCR judge who heard the

testimony weighed the evidence and determined that trial counsel's version of events was more

credible than Petitioner's. The Court presumes this factual finding to be correct and Petitioner has

---

[4] The PCR court further found Petitioner failed to prove the prejudice prong under <u>Strickland</u>. The court found the alibi witnesses' testimony not credible noting they were related to the Petitioner. The court noted also that the alibi witnesses' testimony was contrary to the testimony of the co-defendant, Wilson, implicating Petitioner and placing him at the Swerling's house, and the testimony of Petitioner's girlfriend. The court noted also that Petitioner's mother admitted she did not mention the alibi witnesses after the trial began. As set forth above, to establish a claim of ineffective assistance of counsel, Petitioner must show error and resulting prejudice. Petitioner fails to establish error, the first prong, thus it is not necessary to address prejudice. Tangentially, the court need not decide whether or not the PCR court's factual findings of credibility of the alibi witnesses is subject to the deferential standard applicable to factual findings as set forth in 28 USC § 2254(e)(1).

25

failed to overcome this presumption. See 28 U.S.C. § 2254(e)(1) (noting petitioner must overcome

state court factual findings by clear and convincing evidence). Based upon the record presented,

Petitioner fails to show that the PCR court's ruling on this issue resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established Federal law, nor was it

based on an unreasonable determination of the facts in light of the State court proceeding.


**Ground One (c)**

Petitioner argues that trial counsel was ineffective for failing to object to the prosecutor's

improper vouching for Dawayne Wilson's credibility during closing argument when he stated that

certain testimony was "the truth." (Doc. #60, p. 7). Respondent asserts that when the challenged

remarks are viewed in proper context, there was no vouching. Respondent argues that the challenged

comments did not suggest, in any fashion, that the State was relying on information outside the

evidence presented at trial, and the challenged comments cannot be read as implying that the

prosecution had access to evidence outside the record. Respondent contends that the Solicitor was

"merely pointing out that Stephanie Swerling corroborated Wilson's testimony that he ran out of

duct tape." (Respondent's brief, p. 47). Therefore, Respondent asserts that the PCR court's ruling

was correct. In response to the Motion for Summary Judgment, Petitioner argues that the PCR

judge's ruling involved an unreasonable application of clearly established federal law. (Doc. #56,

p. 8-9).

To provide context to the statements Petitioner cited in his amended petition that he argues

was vouching, the relevant portion of the Assistant Solicitor's closing argument with emphasis on

the statements Petitioner complains, was as follows:

But if, at this point, you still have a doubt, which the State submits you should not, it goes on. Dawayne Wilson, codefendant, and as I said not a good person, not a good person. And let me say one thing about the deal, or, as Mr. Mokeba I believe, explained it or termed it, sweet deal, sweet deal. The State submits that without that deal, we might not be here today. Sometimes the State has to make deals. And as Mr. Pascoe told you, we didn't pick Dawayne Wilson to cut the deal with. Mr. Causey picked Dawayne Wilson.

If you are offended by the deal, do not hold it, do not hold that offense against this family, the Swerlings, don't hold it against law enforcement, hold it against the Solicitor's office, but don't let that get in the way, get in the way of finding the truth in this case because *what Dawayne Wilson told you on the stand, the State submits, is the truth*. He told you they were best friends. He told you they did cocaine together. He told you that he worked for him. He told you that he followed him, did everything he wanted him to do. (Emphasis added).

(App. 708, Lines 3-25).

And sure enough, they went in there and they did everything that they had to do to try and steal that cash because Dawayne Wilson says, Jimmy Causey's the gunman. He walked in first, everybody got on the ground and I tied them up, but I ran out of tape on Stephanie. *And, ladies and gentlemen, that's the truth*. We know that. She even testified to that.[5] (Emphasis added).

(App. 709, lines 6-13).

Finally, we had Sheree McCray. You remember Shereee, girlfriend to Dawayne? What did she say on —this is on cross-examination? Jimmy Causey is a danger. I was scared of Jimmy Causey and Dawayne Wilson. Dawayne Wilson told me that Jimmy Causey and he, Dawayne, had done the Swerling case.

Months later, she gets worried still and she calls Jack Swerling on 12/2/02, identifies herself as Sheree McCray, leaves her phone

---

[5] Stephanie Swerling testified that they taped up her mother and father first but when they got to her they only taped up a little bit of her hands but not her ankles as they ran out of tape. (App. 422). Erica Swerling testified that the robbers taped up her legs and arms, her husbands legs and arms, but only taped her daughter's arms because they ran out of tape when they got to her legs. (App. 357-358).

number and says that Causey and Wilson committed the burglary. And why is that important? Why is that date important? Why is all of that important? Think. It's because the defense is saying that the only reasons that Jimmy Causey–I mean, that Dawayne Wilson is identifying Jimmy Causey is because of the deal.

Well, ladies and gentlemen, months before the deal, he's telling people, his girlfriend, his confidant, his live-in, that Causey was with him. And this is long before the deal. And you heard testimony yesterday also about him telling another individual, Chad Proser, I think his name was, who also reported it.

No ladies and gentlemen, all before the deal, he's telling people. And he's telling people because it's the truth, because it's the truth.

Did she recant? Yep. Yep. She did for a while because that man, that man and Dawayne were still out, they were still loose. She was scared of them. Do you blame her? Know what they did, do you blame her?

*Yet, later on, once they were incarcerated, she came back and told the truth. And she had the courage to get up here, swear on oath and tell you the truth.* (Emphasis added).

(App. 710, lines 13-15; App. 711, lines 1-21).

At the PCR hearing, the colloquy between PCR counsel and trial counsel upon cross-examination was as follows:

Q:    Do you recall the prosecution's closing argument where they said in discussing the testimony of D[a]wayne Wilson, in quote: "That is the truth. We know that"? Do you recall that testimony?

A:    I don't recall the testimony.

Q:    Do you agree that is improper vouching or comment on credibility by the prosecution?

A:    You are going to have to put everything in context, but I don't recall. Again, I don't recall the testimony. I don't—I can't put it in context.

Q.    So you don't think the prosecution did anything wrong?

28

A:       I'm not saying that. I mean, you—you, Mr. Causey and Mr. Petrano have obviously read this transcript better than any of us in here. I will be the first one to admit to you that I haven't read through the whole transcript. I didn't say they didn't do anything wrong. I'm sure that is why, you know, we have the PCR hearing.

(App. 921-922).

The PCR Court held the following with regard to this issue:

The Applicant claims that trial counsel was ineffective for failing to object to the Solicitor's closing argument suggesting that Dawayne Wilson's testimony was "the truth." (ROA p. 09). This Court does not find the Solicitor's argument improper, the Solicitor is not vouching for witness Wilson suggesting that he is aware of facts that the jury is not, or that the jury should believe Wilson because the solicitor does. "A solicitor has a right to state his version of the testimony and to comment on the weight to be given such testimony." Randall v. State, 356 S.C. 639 642, 591 S.E.2d 608, 610 (2004). However, "[a] solicitor may not vouch for the credibility of a State's witness based on personal knowledge or other information outside the record." . . . Here the Solicitor was merely commenting on the weight of Wilson's testimony that he ran out of tape for one of the victims AND that it was the truth because the victim herself certified that fact:

And sure enough, they went in there and they did everything that they had to do to try and steal that cash because Dawayne Wilson says, Jimmy Causey's the gunman, he walked in first, everybody got on the ground and I tied them up, but I ran out of tape on Stephanie. And, ladies and gentlemen, that's the truth. We know that. She even testified to that.

(ROA p. 709 L 6-13).

Accordingly, taken as a whole, the Solicitor's argument is a reasonable inference to the record and a comment on the weight of common witness testimony. Accordingly, the Applicant failed to demonstrate exactly how trial counsel's performance was deficient and how he was prejudiced by the purported deficient performance.

(App. 960-961).

"Vouching generally occurs when the prosecutor's actions are such that a jury could

reasonably believe that the prosecutor was indicating a personal belief in the credibility of the witness." <u>United States v. Johnson</u>, 587 F.3d 625, 632 (4th Cir.2009) (citation and quotation marks omitted). "The rule against vouching exists because 'the prosecution's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.' " *Id. (quoting* <u>United States v. Young</u>, 470 U.S. 1, 18–19, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)). <u>See</u> <u>Young</u>, 470 U.S. at 18–19; <u>Johnson</u>, 587 F.3d at 632; <u>State v. Raffaldt</u>, 318 S.C. 110, 456 S.E.2d 390, 393 (S.C.1995) ("The solicitor has the right to give his version of the testimony and to comment on the weight to be given to the testimony of the defense witnesses. Therefore, although the State cannot 'pit' witnesses during questioning, it may comment on the credibility of the witnesses in argument.").

In this case, Petitioner cannot show that counsel's failure to object to the statements was error, much less that it was objectively unreasonable such that it rendered his performance deficient. However, even if the solicitor's argument was improper, Petitioner fails to carry his burden of proof to show a reasonable probability that the outcome of the trial would have been different if trial counsel had objected. Accordingly, Petitioner fails to show the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(1), (2). Accordingly, it is recommended that summary judgment be granted for Respondent as to Ground One (c).

**Ground One(d)**

In Ground One(d), Petitioner argues that trial counsel was ineffective for failing to object

to or to request a mistrial, when victim, Jack Swerling, admitted to having a friendship with the trial judge. Respondent asserts that this issue is procedurally barred because it was not presented to the state court of appeals on certiorari following the denial of his PCR application and Petitioner cannot show cause for the procedural default and prejudice as a result of the alleged constitutional violation.

In response, Petitioner asserts that this issue is not procedurally barred due to Petitioner's appellate counsel filing an Anders brief so that the court is required to review the entire record to determine whether it contains any meritorious issues.

As this issue was not raised in the petition for writ of certiorari, it is procedurally barred from federal habeas review. Marlar, supra; Coleman, supra. Petitioner has not demonstrated cause and prejudice for his procedural default of this claim. Accordingly, it is recommended that this Ground be dismissed as procedurally barred.


**Ground Two**

In Ground Two of the amended petition, Petitioner asserts that Appellate counsel was ineffective for failing to raise the "unreliable, unduly suggestive identification by robbery victim, Erica Swerling, for appellate review." (Amended petition, p. 1). Respondent asserts that the PCR court's ruling on this issue was not in error.

Appellate Counsel did not testify at the PCR hearing. However, the PCR court ruled on this issue as follows:

> The Applicant claims appellate counsel was ineffective for failing to brief the issue of whether a victim should have been allowed to identify the Applicant at trial. This Court finds the Applicant's claims to be without merit. Appellate Counsel filed an Anders brief. . . .
>
> In the case at hand, Applicant's appellate counsel filed an Anders

brief with the Court of Appeals; the Applicant did not file a pro se brief. "Upon the receipt of the pro se brief or the expiration of the period to file a pro se brief, this Court will then proceed to review the record as required by Anders. If no issue of arguable merit is discovered, the appeal will be dismissed and counsel's petition to be relieved will be granted." State v. Williams, 305 S.C. 116, 406 S.E.2d 357 (1991). In light of Anders and Williams, this Court agrees with the Respondent's argument that there can be no legitimate allegation of ineffective assistance of appellate counsel because the reviewing court itself also conducted a full review of the record, and found there to be no issue of arguable merit. For this PCR court, a circuit court, to find ineffective assistance of appellate counsel when appellate counsel filed an Anders brief, this Court would- in essence- be overruling the appellate court's previous conclusion that there were no issue(s) of arguable merit.

. . .

Even reviewing the ineffective assistance of appellate counsel issue under a Strickland analysis, this Court finds the Applicant has not satisfied his burden of proof.

As explained above, trial counsel testified that the strength of the State's case rested on Dewayne Wilson, meaning that the victim's identification was superfluous compared to the testimony of the other home invader, i.e., Wilson. Also, the Applicant himself had an opportunity to submit a pro se brief on this issue but failed to do so. Accordingly, this Court finds that the Applicant failed to satisfy his burden of proof and demonstrate that appellate counsel's performance was deficient or that he was prejudiced.

(App. 962-964).

In this case, appellate counsel filed an Anders brief. In Anders v. California, the United States Supreme Court announced the procedure an appointed attorney should follow if the attorney believes the client's appeal is frivolous and without merit. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). The United States Supreme Court held the attorney could petition for permission to withdraw from the case, but that the petition for withdrawal must be accompanied by a brief "referring to anything in the record that might arguably support the appeal."

32

Id. at 744, 87 S.Ct. 1400. Under Anders, the defendant must be given time to respond and to raise any additional points after his attorney submits the brief. Id. The Court is then obligated to conduct a "full examination" of the record to determine whether the appeal is "wholly frivolous." Id. According to Anders, if the reviewing court finds the appeal is frivolous, "it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires." Id., State v. McKennedy, 348 S.C. 270, 279, 559 S.E.2d 850, 855 (2002). When appellate counsel files an Anders brief with the South Carolina Court of Appeals, the appeal will be dismissed and counsel's petition to be relieved will be granted if no issue of arguable merit is discovered. State v. Williams, 305 S.C. 116, 406 S.E.2d 357 (1991).

In this case, appellate counsel filed an Anders brief and petition to be dismissed as counsel. Counsel's petition to be relieved was granted and the appeal dismissed. Based upon Anders and Williams, there can be no legitimate allegation of ineffective assistance of appellate counsel in this case because the reviewing court also conducted a full review of the record and found no issue of arguable merit. See Evans v. McCoy, 2014 WL 1254147 (D.S.C. March 26, 2014).[6] Accordingly, Petitioner fails to show the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(1), (2).[7]

---

[6] Even if Erica Swerling's identification of Petitioner was not allowed, co-defendant Wilson identified and testified that Petitioner was the one with him when they entered the Swerling's home to rob them. Thus, Petitioner has not shown prejudice under the Strickland analysis.

[7] Even though not argued by the parties, the court notes that to the extent that Petitioner intends to argue that his direct appeal counsel was ineffective for failing to raise the "unduly suggestive identification by robbery victim, Erica Swerling, for appellant review," relief under Martinez is

**Ground Three**

Petitioner submits that the trial judge abused his discretion by failing to suppress the identification by the robbery victim, Mrs. Erica Swerling. Respondent argues that this issue was procedurally defaulted in state court because it was not presented to the state court of appeals on direct appeal.

The only claim raised in the direct appeal pursuant to an Anders brief concerned alleged trial court error in admitting evidence of appellant's prior cocaine use.  As this issue was not fairly presented to the South Carolina appellate courts, the issue is procedurally defaulted from federal habeas review. See Coleman, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review).[8] Petitioner makes no showing of cause for his failure to raise the claim or actual prejudice, nor does he demonstrate that failure to consider his claim would result in a miscarriage of justice. Id. at 749-750. (See the discussion under Ground Two above). Therefore, he is unable to overcome the procedural bar. Id.


**Ground Four**

In the last ground, Petitioner asserts that the cumulative effect of the trial errors violated his

———————————————

unavailable because that issue was raised and addressed by the post-conviction judge in Petitioner's initial post-conviction proceeding. (App. 962-964).


[8] Even though not argued by either party, the undersigned would note that  Martinez v. Ryan, ——— U.S. ———, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012), does not apply to this issue. The Martinez case holds that federal courts may find cause to excuse a procedural default where a prisoner had inadequate assistance in his initial-review collateral proceedings and the defaulted claim at issue is one of ineffective assistance at trial. Id. at 1318. Given that Petitioner's stated ground is not one of ineffective assistance, Martinez is inapplicable.

right to due process. Respondent argues that Petitioner cannot meet his burden of proof under Strickland and 2254(d)(1).

The PCR court held the following with relation to the cumulative error argument:

> The Applicant's cumulative error argument fails both factually and legally. First, as discussed above, there are no individual errors, small or large, to "Accumulate."
>
> While it is unsettled law whether individual errors, which may not be independently prejudicial, may be prejudicial when taken as a whole, we recognize the threshold to asking the cumulative prejudicial questions is to first find multiple errors. Multiple errors do not exist in this case to form any cumulative prejudicial effect.
>
> Green v,. State, 351 S.C. 184, 197, 569 S.E2d 318, 325 (2002).
>
> Second, whether cumulative error is a valid claim for relief is not clear. "Whether several errors, which are independently found not to be prejudicial, may cumulatively warrant relief is an unsettled question in South Carolina." Simpson v. Moore, 367 S.C. 587, 604, 627 S.E.2d 701, 710 (2006) *citing* Green.

Having found that none of the issues raised by Petitioner amounted to error, he cannot aggregate them to form a constitutional violation. See Fisher v. Angelone, 163 F.3d 835, 852-853 (1998), *cert*. denied, 526 U.S. 1035, 119 S.Ct. 1290, 143 L.Ed.2d 382 (1999) (holding that various claims of ineffective assistance of counsel, like claims of trial error, would not entitle petitioner to relief because a cumulative error analysis would apply only to the effect of those matters actually determined to be constitutional error and not the cumulative effect of all matters alleged or deemed deficient). Therefore, it is recommended that this ground be dismissed.

## VI.  CONCLUSION

Based on the foregoing, it is RECOMMENDED that Respondent's amended Motion for

Summary Judgment (docket entry #78) be GRANTED and the Petitioner's Petition for Writ of

Habeas Corpus be denied, and the petition dismissed without an evidentiary hearing.

Respectfully submitted,

s/Thomas E. Rogers, III

Thomas E. Rogers, III
United States Magistrate Judge

May 30, 2014
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**